### TOOMEY v. DELAWARE, L. & W. R. CO.

(Superior Court of New York City, General Term. January 3, 1893.)

INADEQUATE DAMAGES—PREJUDICE OF JURY.
    In an action against a railroad company for wrongfully causing plaintiff's arrest, it appeared that plaintiff, in good faith, offered a conductor on defend-ant's railroad the wrong part of an excursion ticket, and one which had been punched by a punch not in use on the train on which he attempted to pass it. The conductor refused to accept the ticket, and caused plaintiff's arrest, on the ground that he was trying to avoid payment of his fare. The magistrate, after hearing the conductor's statement, discharged plaintiff, on the ground that there was no dishonest intention on his part. It also ap-peared that neither party intended to injure the other, and that both were actuated by honest motives. *Held*, that it could not be said that a verdict for only nominal damages proved either bias or prejudice on the part of the jury, and such verdict would not be disturbed.

Appeal from jury term.

Action by Andrew J. Toomey against the Delaware, Lackawanna & Western Railroad Company to recover damages for causing plaintiff's arrest, on the ground that he was attempting to ride on defendant's road without paying his fare. From an order denying his motion for a new trial, and from a judgment entered on a verdict in his favor for nominal damages, plaintiff appeals. Affirmed.

Argued before McADAM and GILDERSLEEVE, JJ.

Robert Sewell, for appellant.
Hamilton Odell, for respondent.

McADAM, J. On September 27, 1890, the plaintiff purchased an excursion ticket over defendant's road from Barclay street, New York, to Orange, N. J. The ticket was in two colors; the white end running from New York to Orange, and the red end from Orange to New York. The plaintiff left the train at Brick Church, before reaching Orange, and some hours later took a train at Brick Church to return to New York. The assistant conductor of the incoming train asked the plaintiff for his ticket, and the plaintiff handed him a red ticket, which was punched and returned to him. Before reaching Hoboken, plaintiff was asked to surrender his ticket, and offered the conductor a white ticket, which had been punched with a punch not in use on that train. The con-ductor refused to accept the ticket, and a dispute followed, of which conflicting versions are given by the different witnesses. A statute of

New Jersey authorizes the arrest and detention of any person who attempts to travel in a carriage of any railroad company without having paid his fare and with intent to avoid payment thereof. The offender forfeits to the company a sum not exceeding five dollars, which "fine" may be imposed "by any justice of the peace before whom such person shall be brought, on complaint made on oath or affirmation, and after a summary hearing of the facts and circumstances." When the train reached Hoboken there was another wrangle. The conductor tried to convince the plaintiff and his friends that they were mistaken in saying that the white ticket with the "spade" punch mark had been punched on his train; but there was an indisposition to listen. The defendant's night dispatcher called a police officer, and requested him to take the plaintiff into custody. The plaintiff was taken to the police station, a distance of from 500 to 700 feet, where he and his two friends were arraigned before the captain of police, and after a delay of about five minutes were taken before the recorder of Hoboken, in the same building. No written or sworn complaint was made. No oath was administered to the conductor or to the plaintiff. After hearing the conductor's statement, the parties were discharged, for reasons that were stated by the recorder in his testimony. The whole affair, from the time the train reached Hoboken, was over in half an hour or less. The charge made before the recorder was that of violating the state statute before referred to, and the plaintiff was discharged upon the ground that there was no dishonest intention on his part,—simply a mistake in getting off one train and going on another. It will be observed that the arrest was by virtue of an express statute, and the trial judge, therefore, properly sent the questions of malice and want of probable cause to the jury, and they found for the plaintiff, assessing his damages at six cents. There is no precise rule by which damages are to be measured in a case of this character. Much is left to the good sense and discretion of the jury, and the damages, when fixed by them in actions of tort, are rarely disturbed, unless so manifestly excessive or inadequate as to indicate bias or prejudice on the part of the jury. It was evident throughout the trial that the trouble had its origin in an honest mistake, of which the plaintiff was the responsible author; that neither party intended to injure the other; and that what was done from beginning to end was through honest motives, and as a consequence of an innocent, but unfortunate, error. In such a case it would indeed be difficult to say that the jury were absolutely bound to give substantial damages, and that a verdict for nominal damages only proved either bias or prejudice on the part of the jury. The result shows that the peculiar circumstances of the case had much to do with the amount of the verdict, and that it evidences the conscientious conclusions of 12 good and lawful men from the vicinage. Wavle v. Wavle, 9 Hun, 125, was an action of slander. The verdict was for six cents. A new trial was granted by the trial court, on the ground that the damages were insufficient. On appeal, the order granting a new trial was reversed, the court saying:

"The amount of damages to which plaintiff is entitled was not fixed, definite, or certain, nor was it capable of being made so by any process of computation. The damages were wholly in the discretion of the jury, and not controlled as to amount by any evidence given upon the trial. The appearance, character and conduct of the parties and witnesses, the probabilities surrounding the transaction, the nature of the slander, and the injury done, all constituted elements to be considered by the jury. This has been done, with the result seen. Whether such verdict is the result of a compromise of differences among jurors, or whether it expresses the judgment of each juror, we cannot tell. Such results in such cases are within the experience of every judge. Ordinarily such verdicts are deemed expressions of the jury that each party is more or less in fault, and that neither shall profit thereby. In cases like slander, libel, and malicious prosecution it is well to have an end of litigation as early as possible. Such actions generally involve more of passion than of principle or actual damage. So when such a case has been once fairly tried and considered by a jury, its decision ought generally to be conclusive and final. * * * In the absence of any evidence of dishonesty or misconduct on the part of the jury, we think its verdict ought to stand."

The verdict certainly vindicates the plaintiff, as far as vindication was necessary. It did not attempt to assess the value of his "character," which, in the general sense of the term, was not on trial; but it, in effect, held that, though filled with honest intentions, the plaintiff had made a mistake, which he failed to make the defendant's conductor properly understand and believe, and the latter, in consequence, was permitted to act upon appearances, and having done so, without malice or evil intent, the jury were essentially the judges of the amount of compensation which the defendant ought to pay under the circumstances; and, there being no merit in the exceptions, the judgment and order appealed from must be affirmed, with costs.

GILDERSLEEVE, J., (concurring.) In my opinion the evidence showed the damages to be substantial, and not nominal. Had I been a juror, I should have been in favor of awarding something more than nominal damages. I agree, however, that the measure of damages was entirely within the discretion of the jury. The evidence does not fix, with certainty, any sum below which the jury would not be warranted in giving in making an award. To the authorities on this point cited by my learned associate may be added Henderson v. McReynolds, (Sup.) 14 N. Y. Supp. 351. The jury acted within its province, and its verdict should not be disturbed for the reason that the court entertains an opinion not in accord with that of the jury on the question of damages. I cannot agree with my learned associate when he says: "It was evident throughout the trial that the trouble had its origin in an honest mistake, of which the plaintiff was the responsible author." Under the evidence, the jury were justified in placing the responsibility of the acts that were the inception of the trouble with either party. The evidence leads me to believe they originated with the defendant's servants. I agree in the result reached by my learned associate.

The judgment and order appealed from should be affirmed, with costs.